## 49158. HALL v. THE STATE.

STOLZ, Judge.

Via certificate for immediate review, the defendant appeals from the denial of his special plea in bar to

dismiss his indictment for armed robbery on the ground of the denial of a speedy trial. *Held:*

The four factors relevant for consideration in determining whether there was a violation of Sixth Amendment due process requirements for a speedy trial have been stated as: (a) Length of delay, (b) the reason for the delay, (c) the defendant's assertion of his right, and (d) prejudice to the defendant. Barker v. Wingo, 407 U. S. 514, 530 (92 SC 2182, 33 LE2d 101); *Mays v. State,* 229 Ga. 609, 611 (193 SE2d 825) and cits.; *Hughes v. State,* 228 Ga. 593, 594 (1) (187 SE2d 135).

In the case sub judice, (a) the *length of delay* from the issuance of the arrest warrant in Muscogee County in January, 1971 (at which time the City of Columbus Police Department had notice that the defendant was serving a sentence in Dougherty County) and the trial on November 21, 1973, was approximately 34 months, or almost 3 years. As to (b) *the reason for the delay,* the district attorney testified that, although the police department knew about the case, no file had ever been turned over to his office for prosecution; yet he admitted that "perhaps we have no good reason," and there was evidence that the defendant's October 19, 1971 motion for speedy trial was served on the district attorney, remaining in his files until June, 1973, and that, ever since the issuance of the arrest warrant, both City of Columbus and Muscogee County officials had seen the defendant in the various areas (all within the state) in which he had been held in continuous confinement. Regarding (c) *the defendant's assertion of his right,* such assertion was certainly shown by his October 19, 1971 filing of a motion for a speedy trial, as well as by his wife's written request to the Governor for an early disposition of his case. In assessing (d) *prejudice to the defendant,* the Supreme Court has identified three interests which the speedy-trial right was designed to protect: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." Barker v. Wingo, supra, p. 532. Barker points out that, while defendants sometimes benefit from a delay in the trial, society seldom does. See pp. 519-521.

The approach sanctioned by the court in Barker is "a balancing test, in which the conduct of both the prosecution and the defendant are weighed." P. 530. Regarding the government's justification for delay, the court said, at p. 531, "[a] deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since *the ultimate responsibility for such circumstances must rest with the government rather than with the defendant.*"(Emphasis supplied.) In the present case, the state's justification was negligence at the least. Having weighed the lack of justification for the considerable, almost 3 years' delay, and the defendant's assertion of his right, we must also consider the prejudice to the defendant. On p. 532 of Barker, the court pointed out not only the seriousness of the possibility that the defense will be impaired, but also the difficulty of proof of such impairment, stating, "[t]here is also prejudice if defense witnesses are unable to recall accurately events of the distant past. Loss of memory, however, is not always reflected in the record because what has been forgotten can rarely be shown." Justices Brennan and Marshall stated in their concurring opinion in Dickey v. Florida, 398 U. S. 30, 55 (90 SC 1564, 26 LE2d 26), "[w]hen the . . . right to speedy trial is at stake, it may be equally realistic and necessary to assume prejudice once the accused shows that he was denied a rapid prosecution." Justices White and Brennan expressed a similar view in their concurring opinion in Barker, supra, p. 537: "A defendant desiring a speedy trial, therefore, should have it within some reasonable time; and only special circumstances presenting a more pressing public need with respect to the case itself should suffice to justify delay. Only if such special considerations are in the case and if they outweigh the inevitable personal prejudice resulting from delay would it be necessary to consider whether there has been or would be prejudice to the defense at trial."

"The right to a speedy trial is generically different from any of the other rights enshrined in the

Constitution for the protection of the accused. In addition to the general concern that all accused persons be treated according to decent and fair procedures, there is a societal interest in providing a speedy trial which exists separate from, and at times in opposition to, the interests of the accused. The inability of courts to provide a prompt trial has contributed to a large backlog of cases in urban courts which, among other things, enables defendants to negotiate more effectively for pleas of guilty to lesser offenses and otherwise manipulate the system. In addition, persons released on bond for lengthy periods awaiting trial have an opportunity to commit other crimes. . . Moreover, the longer an accused is free awaiting trial, the more tempting becomes his opportunity to jump bail and escape. Finally, delay between arrest and punishment may have a detrimental effect on rehabilitation." Barker, supra, p. 519. "The nature of the speedy trial right does make it impossible to pinpoint a precise time in the process when the right must be asserted or waived, but that fact does not argue for placing the burden of protecting the right solely on defendants. A defendant has no duty to bring himself to trial; the state has that duty as well as the duty of insuring that the trial is consistent with due process. Moreover, for the reasons earlier expressed, society has a particular interest in bringing swift prosecutions, and society's representatives are the ones who should protect that interest." Id., p. 527.

As heretofore noted, the United States Supreme Court's opinion in Barker reveals "flexible" standards based on practical considerations. However, "that aspect of the holding in Barker was directed at the process of determining *whether* a denial of speedy trial had occurred; it did not deal with the *remedy* for denial of this right. By definition, such denial is unlike some of the other guarantees of the Sixth Amendment. For example, failure to afford a public trial, an impartial jury, notice of charges, or compulsory service can ordinarily be cured by providing those guaranteed rights in a new trial. The speedy trial guarantee recognizes that a prolonged delay may subject the accused to an emotional stress that can be presumed to result in the ordinary person from

uncertainties in the prospect of facing public trial or of receiving a sentence longer than, or consecutive to, the one he is presently serving — uncertainties that a prompt trial removes. Smith v. Hooey, 393 U. S., at 379; United States v. Ewell, 383 U. S. 116, 120 (1966). We recognize, as the court did in Smith v. Hooey, that the stress from a delayed trial may be less on a prisoner already confined, whose family ties and employment have been interrupted, but other factors such as the prospect of rehabilitation may also be affected adversely. . . It is true that Barker described dismissal of an indictment for denial of a speedy trial as an 'unsatisfactorily severe remedy.' Indeed, in practice, 'it means that a defendant who may be guilty of a serious crime will go free, without having been tried.' 407 U. S., at 522. But such severe remedies . are not unique in the application of constitutional standards. In light of the policies which underlie the right to a speedy trial, dismissal must remain, as Barker noted, 'the only possible remedy.' " Strunk v. United States, 412 U. S. 434, 438 (93 SC 2260, 37 LE2d 56) (1973).

Accordingly, the judicial determination having been made hereinabove that the accused's Sixth Amendment due process rights were violated by the deprivation of a speedy trial, the denial of the defendant's special plea in bar to dismiss the indictment, must be reversed.

*Judgment reversed. Deen and Webb. JJ., concur.*

ARGUED MARCH 5, 1974 — DECIDED APRIL 24, 1974 —
REHEARING DENIED MAY 14, 1974 —

*Martin, Kilpatrick & Davidson, Frank K. Martin, Jack A. Zimmerman, III, Paul Kilpatrick,* for appellant.
*E. Mullins Whisnant, District Attorney,* for appellee.